UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JUAN ROCHA CORTEZ,

                   Plaintiff-Petitioner,

           v.

CHAD WOLF, Acting Secretary of the
Department of Homeland Security; KENNETH
T. CUCCINELLI, Acting Director of the United
States Citizenship and Immigration Services;
DONALD NEUFELD, Associate Director,
Service Center Operations, United States
Citizenship and Immigration Services; LAURA
B. ZUCHOWSKI, Field Office Director,
Vermont Service Center, United States
Citizenship and Immigration Services; ANNE
ARRIES CORSANO, District Director of
United States Citizenship and Immigration
Services; CYNTHIA MUNITA, Field Office
Director of United States Citizenship and
Immigration Services, Department of Homeland
Security; ELIZABETH GODFREY, Acting
Field Office Director of Enforcement and
Removal Operations, Seattle District Office,
Immigration and Customs Enforcement;
STEVEN LANGFORD, the Geo Group Inc.,
Warden of Northwest Detention Center; the
WARDEN of the Northwest Immigration
Detention Center,

                 Defendants-Respondents.

Case No. 2:19-cv-2091

**COMPLAINT**

## INTRODUCTION

Petitioner Juan Rocha Cortez (Mr. Rocha Cortez) is a Mexican immigrant who has lived in the United States for nearly 15 years. In 2007, he was the victim of a vicious assault that left him hospitalized when a gang member in Caldwell, Idaho struck him over the head with a baseball bat. Following the attack, Mr. Rocha Cortez cooperated with the Caldwell Police Department, and later, with the Canyon County Prosecutor's Office. His cooperation resulted in the conviction of his assailants.

Based on this serious assault and his cooperation, Mr. Rocha Cortez applied for a U visa in 2017 to obtain lawful status in the United States. Since that date, United States Citizenship and Immigration Services (USCIS), the agency responsible for adjudicating U visa petitions, has not acted on Mr. Rocha Cortez's petition. This is true despite a serious change in Mr. Rocha Cortez's personal circumstances. On February 27, 2019, Immigration and Customs Enforcement (ICE) officers arrested Mr. Rocha Cortez as he left his apartment one morning. Since that time, ICE has detained Mr. Rocha Cortez at the Northwest Detention Center in Tacoma, Washington. Throughout this time, USCIS has failed to make a prima facie determination on Mr. Rocha Cortez's U-visa application, despite repeated requests from his attorney to do so and despite its legal obligation to conduct such an inquiry. Without such a determination, Mr. Rocha is in danger of being removed from this country. In light of the significant delay in making a prima facie determination and adjudicating his application, Mr. Rocha Cortez asks this Court to order Defendants to remedy their unreasonable delay and act on his application. Moreover, given Mr. Rocha Cortez' continuing detention nearly a year after ICE first detained him, he asks this Court to order Defendants to release him or provide him with a bond hearing where the government bears the burden to justify his continuing detention.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1

2                                          **JURISDICTION**

3        1.      This Court has jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. §

4   1361 (mandamus), and 28 U.S.C. § 2241(c)(5) (habeas corpus).

5        2.      This Court may grant relief pursuant to 5 U.S.C. § 706, 28 U.S.C. § 1361, 28

6   U.S.C. § 2241 and the All Writs Act, 28 U.S.C. § 1651.

7                                             **VENUE**

8        3.      Venue is properly in the United States District Court for the Western District of

9   Washington pursuant to 28 U.S.C. § 1391(e) because Defendants are employees, officers, and

10  agencies of the United States and no real property is at issue in this case. Additionally, venue is

11  proper in this Court because a substantial part of the events or omissions giving rise to the claims

12  occurred in the Western District of Washington.

13       4.      Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493-

14  500 (1973), venue also properly lies in this Court because the Court is located in the judicial

15  district in which Mr. Rocha Cortez currently is in custody.

16                                           **PARTIES**

17       5.      Petitioner Juan Rocha Cortez is a Mexican immigrant who is currently in

18  removal proceedings and is detained at the Northwest Detention Center in the custody of the

19  Department of Homeland Security (DHS). He applied for U nonimmigrant status in 2017 and

20  was ordered removed in September 2019. His removal case is currently before the Board of

21  Immigration Appeals, and his U nonimmigrant petition remains pending before USCIS.

22       6.      Defendant Chad Wolf is the Acting Secretary of the Department of Homeland

23  Security. He is responsible for the implementation and enforcement of the INA, and oversees

24

COMPLAINT - 2
Case No. 2:19-cv-2091

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

ICE and USCIS. Mr. Wolf has ultimate custodial authority over Petitioner and is sued in his official capacity.

7.      Defendant Kenneth Cuccinelli is the Acting Director of USCIS and is responsible for the agency's day to day operations, including the processing of U visa applications. Plaintiff sues Defendant Cuccinelli in his official capacity.

8.      Defendant Donald Neufeld is Associate Director for Service Center Operations with USCIS. In that capacity, Defendant Neufeld is responsible for the Vermont Service Center, which is tasked with processed and adjudicating U visa petitions. Plaintiff sue Defendant Neufeld in his official capacity.

9.      Defendant Laura B. Zuchowski is Director of the Vermont Service Center. The Vermont Service Center is responsible for adjudicating Mr. Juan Cortez's U-visa petition. Plaintiff sues Defendant Zuchowski in her official capacity.

10.      Defendant Anne Arries Corsano is the District Director of the Seattle District of USCIS, and is sued in her official capacity.

11.      Defendant Cynthia Munita is the Field Office Director of the USCIS Seattle Field Office, and is sued in her official capacity.

12.      Respondent Elizabeth Godfrey is the Acting Director of the Seattle District Office of Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement, Department of Homeland Security. As such, Ms. Godfrey is Petitioner's immediate custodian and the official charged with removing him from the United States. Plaintiff sues Ms. Godfrey in her official capacity.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

13.     Respondent Steven Langford is, on information and belief, employed by the private corporation Geo Group Inc., as Warden of the Northwest Detention Center, where Petitioner is detained. He is sued in his official capacity.

## LEGAL FRAMEWORK

### U Non-Immigrant Status

14.     U nonimmigrant status is a form of lawful immigration status. Congress created the status to protect nonimmigrant victims of serious crimes and to increase public safety by encouraging those nonimmigrants to report such crimes to law enforcement officers and to assist in the prosecution of such crimes. Congress explained when passing the authorizing statute that it hoped U status would "strengthen the ability of law enforcement agencies to detect, investigate, and prosecute cases." Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, § 1513(a)(2), 114 Stat. 1466, 1533 (2000).

15.     To obtain U status, an applicant must satisfy several criteria. The applicant must (1) be the victim of qualifying criminal activity, (2) have suffered substantial physical or mental abuse as a result of that criminal activity; (3) possess credible and reliable information concerning the criminal activity; and (4) have received a signed, third-party certification from a law enforcement official, prosecutor, judge, or other, similar official attesting to their helpfulness in the investigation or prosecution of the criminal activity. *See* 8 U.S.C. § 1101(a)(15)(U); *id.* § 1184(p); 8 C.F.R. § 214.14(b).

16.     An individual seeking U nonimmigrant status must complete Form I-918, Petition for U Nonimmigrant Status, and submit that form to USCIS's Vermont Service Center. The Vermont Service Center and USCIS's Nebraska Service Center have exclusive jurisdiction over, and jointly process, petitions for U nonimmigrant status.

COMPLAINT - 4
Case No. 2:19-cv-2091

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

17.   Under the Immigration and Nationality Act (INA), Congress provided a mechanism to help protect noncitizens in removal proceedings who are eligible to receive U status. Section 237 of the INA empowers the Secretary of Homeland Security to determine whether a U visa petition "sets forth a prima facie case." 8 U.S.C. § 1227(d)(1). The Secretary has designated USCIS to make such prima facie determinations.

18.   Once an applicant receives a positive prima facie determination, ICE may grant an administrative stay of removal from the United States. *See id.*; *see also* ICE, Revision of Stay of Removal Request Reviews for U Visa Petitioners (last updated Nov. 12, 2019), https://www.ice.gov/factsheets/revision-stay-removal-request-reviews-u-visa-petitioners.

19.   Moreover, a positive prima facie determination can also warrant a continuance in removal proceedings while the U visa applicant waits for USCIS to adjudicate their application. As the Board of Immigration Appeals (BIA) explained in *Matter of Sanchez Sosa*, "there is a rebuttable presumption that [a noncitizen] who has filed a prima facie approvable application with the USCIS will warrant a favorable exercise of discretion for a continuance for a reasonable period of time." 25 I. & N. Dec. 807 (BIA 2012).

20.   By receiving a continuance, a U visa applicant may be able to extend their removal proceedings until USCIS places them on the waitlist. That placement in turn protects the applicant from removal.

21.   Only 10,000 individuals may receive U status in any given fiscal year. 8 U.S.C. § 1184(p)(2)(A).

22.   Individuals who would receive U status but for the statutory cap of 10,000 must be placed on a waiting list pending a final grant or denial of their petition. 8 C.F.R. §

COMPLAINT - 5
Case No. 2:19-cv-2091

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

214.14(d)(2). Defendants' own regulations require them to adjudicate and place on the waiting list qualified U status applicants. *Id.*

23.     The waiting list for those with approved applications also provides important protections. Petitioners on the waiting list, as well the family members of those petitioners, are eligible for employment authorization and are not subject to removal from the United States. *Id.*; *see also* ICE, Revision of Stay of Removal Request Reviews for U Visa Petitioners (last updated Nov. 12, 2019), https://www.ice.gov/factsheets/revision-stay-removal-request-reviews-u-visa-petitioners.

24.     Under 8 C.F.R. § 214.14(d)(2), Defendants are required to place on the waiting list all petitioners who would be granted U status but for the statutory cap. As recently as fiscal year 2014, USCIS processed U-visa applications within 5 months of receipt to comply with this requirement, quickly placing "[a]ll eligible petitioners" on the waiting list. 8 C.F.R. § 214.14(d)(2).

25.     Since 2014, the processing time has skyrocketed. Today, the U status processing time exceeds four years just for placement on the U visa waitlist. In fact, between fiscal year 2016 and fiscal year 2018, the processing time for U-status petitions nearly doubled, even while the number of new petitions filed in that time period did not increase.

26.     Moreover, since 2014, USCIS has also *decreased* the number of individuals on the waitlist, despite its duty to make that waitlist available to "[a]ll eligible petitioners." 8 C.F.R. § 214.14(d)(2).

27.     Finally, once granted, U status comes with work authorization, 8 U.S.C. § 1184(p)(3)(B)) and generally lasts for four years, *id.* § 1184(p)(6)). In the final year, U-status holders may apply to adjust their status to lawful permanent resident status. *Id.* § 1255(m).

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

**Immigration Detention and Due Process**

28.     While the INA and federal regulations safeguard Mr. Rocha Cortez's rights when applying for a U visa, the Constitution protects his rights in detention. As the Supreme Court has explained, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

29.     The INA envisions three basic forms of detention for noncitizens in removal proceedings. First, and at issue here, is detention for noncitizens in regular, non-expedited removal proceedings. *See* 8 U.S.C. § 1226(a), (c). Individuals in § 1226(a) detention are entitled to a bond hearing at the outset of their detention, while noncitizens who have committed certain crimes are subject to mandatory detention. *See id.* § 1226(c). As Mr. Rocha Cortez has no disqualifying crimes, he is subject to detention under § 1226(a).

30.     The INA also provides for mandatory detention for noncitizens in expedited removal proceedings, 8 U.S.C. § 1225(b)(1), and detention for noncitizens whose immigration cases are completed, *id.* § 1231(a)(6). *See Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1111-13 (W.D. Wash. 2019) (providing overview of INA's detention authorities).

31.     Most recently, in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), the Supreme Court held that as a matter of statutory interpretation, 8 U.S.C. § 1226(a) does not require the government to provide a detainee more than an initial bond hearing. Significantly, the Court did not reach the constitutional question of whether the Due Process Clause requires an opportunity to test the government's justification for detention once detention after that initial hearing becomes prolonged.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

32.     Since the Supreme Court's *Jennings* decision, the Ninth Circuit has expressed "grave doubt" that "any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018).

33.     To guarantee against such arbitrary detention and to guarantee the right to liberty, due process requires "adequate procedural protections" that ensure government's asserted justification for a noncitizen's physical confinement "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (internal quotation marks omitted).

34.     In the immigration context, the Supreme Court has recognized only two valid purposes for civil detention: to mitigate the risks of danger to the community and to prevent flight. *Id.*; *Demore*, 538 U.S. 510, 522, 528 (2003). The government may not detain a noncitizen based on any other justification.

35.     As a result, where the government detains a noncitizen for a prolonged period, due process requires an individualized hearing before a neutral decisionmaker to determine whether detention remains reasonably related to its purpose. *Demore*, 538 U.S. at 532 (Kennedy, J., concurring); *see also Jackson v. Indiana*, 406 U.S. 715, 733 (1972) (detention beyond the "initial commitment" requires additional safeguards); *McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 249-50 (1972) (noting that "lesser safeguards may be appropriate" for "short-term confinement"); *Hutto v. Finney*, 437 U.S. 678, 685-86 (1978) (observing, in Eighth Amendment context, that "the length of confinement cannot be ignored in deciding whether [a] confinement meets constitutional standards").

COMPLAINT - 8
Case No. 2:19-cv-2091

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

36.     Detention without a bond hearing is unconstitutional when it becomes prolonged, exceeding six months. *See Demore*, 538 U.S. at 529-30 (upholding only "brief" detentions under 8 U.S.C. § 1226(c) that last "roughly a month and a half in the vast majority of cases . . . and about five months in the minority of cases in which the alien chooses to appeal"); *Zadvydas*, 533 U.S. at 701 ("Congress previously doubted the constitutionality of detention for more than six months.").

37.     The recognition that six months constitutes a substantial period of confinement is deeply rooted in our legal tradition. With only a few exceptions, "in the late 18th century in American crimes triable without a jury were for the most part punishable by no more than a six-month prison term." *Duncan v. Louisiana*, 391 U.S. 145, 161 & n.34 (1968). Consistent with this tradition, the Supreme Court has found six months to be the limit of confinement for a criminal offense that a federal court may impose without the protection afforded by a jury trial. *Cheff v. Schnackenberg*, 384 U.S. 373, 380 (1966) (plurality opinion). The Court has also looked to six months as a benchmark in other contexts involving civil detention. *See McNeil*, 407 U.S. at 249, 250-52 (recognizing six months as an outer limit for confinement without individualized inquiry for civil commitment).

38.     Accordingly, the Ninth Circuit has held that immigration detention becomes prolonged at six months. *See Diouf v. Napolitano*, 634 F.3d 1081, 1091 (9th Cir. 2011).

39.     Moreover, the Supreme Court has repeatedly recognized that individuals detained for civil reasons must receive additional process *after* their original commitment. Such additional process is required to guarantee that detention continues to comport with due process by guaranteeing detention remains reasonably related to its purpose. *See, e.g.*, *Foucha v. Louisiana*,

504 U.S. 71, 78 (1992); *O'Connor v. Donaldson*, 422 U.S. 563, 574–75 (1975); *Jackson v. Indiana*, 406 U.S. 715, 738 (1972); *McNeil*, 407 U.S. at 249-50.

40.     Accordingly, immigration detention requires an additional bond hearing after an individual has been detained for six months under § 1226(a). And even if a bond hearing is not required in every such case, detention for six months provides a strong presumption that continued detention is unreasonable absent an opportunity to test the government's justification for continued detention.

41.     Due process also requires certain minimal procedures at bond hearings. First, the government must bear the burden of proof by clear and convincing evidence to justify continued detention. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011). Due process requires placing the burden on the government because of the profound liberty interests at stake when the government continues to detain a noncitizen for a prolonged period. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 750, 752 (1987) (upholding pre-trial detention where the detainee was afforded a "full-blown adversary hearing," requiring "clear and convincing evidence" before a "neutral decisionmaker"); *Foucha*, 504 U.S. at 81-83.

42.     Second, the decisionmaker must consider available alternatives to detention. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). Detention is not reasonably related to its purposes of flight risk and protecting the community from danger if reasonable alternatives are available. ICE's alternatives to detention program—the Intensive Supervision Appearance Program (ISAP)—has achieved extraordinary success in ensuring appearance at removal proceedings, reaching compliance rates close to 100 percent. *See Hernandez v. Sessions*, 872 F.3d 976, 991 (9th Cir. 2017). It follows that alternatives to detention must be considered in determining whether prolonged detention is warranted.

COMPLAINT - 10
Case No. 2:19-cv-2091

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

43.     Finally, if the government cannot meet its burden, a decisionmaker must assess a noncitizen's ability to pay a bond must when determining the appropriate conditions of release. *Id.* at 991.

## FACTUAL ALLEGATIONS

### Mr. Rocha Cortez's U Visa Petition and Removal Proceedings

44.     Mr. Rocha Cortez is a Mexican immigrant who entered the United States in 2005.

45.     On June 10, 2007, Mr. Rocha Cortez was walking with a friend when a group of people confronted them. One of the men in the group displayed a pistol, while another individual in the group struck Mr. Rocha Cortez in the head with a bat.

46.     Mr. Rocha Cortez and his friend did nothing to provoke the violent attack and had no prior connections to anyone in the group or the assailant who struck him with a bat. Police records from the incident indicate that the assailant, who was a suspected gang member, believed Mr. Rocha Cortez was someone else who had allegedly attacked a friend of the assailant's.

47.     Mr. Rocha Cortez was hospitalized with a significant head injury following the incident. While he was still in the hospital, an officer with the Caldwell Police Department came to ask him questions about the incident. The information Mr. Rocha Cortez provided helped lead to his assailant's arrest.

48.     A few days later, on June 13, 2007, Mr. Rocha Cortez came to the police department after he was released from the hospital. Mr. Rocha Cortez provided further assistance and another statement to the investigating officers about the assault. During this second meeting with the police, Mr. Rocha Cortez took papers with him to complete a written witness statement.

49.     On June 19, 2007, Mr. Rocha Cortez again visited the police department to answer the investigating officers' questions. During this interview, Mr. Rocha Cortez expressed

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1  fear to the officers that he might again be a target if he assisted the police, noting that he had not

2  known the people who confronted him. He also identified one of the members of the group who

3  had assaulted him as the member with a pistol when asked to identify that person in a photo line-

4  up.

5      50.     Based on Mr. Rocha Cortez's assistance and that of other witnesses, the Canyon

6  County Prosecutor's Office successfully prosecuted the man who had displayed the pistol for

7  violating Idaho Code Ann. § 18-3303. That statute criminalizes exhibiting a deadly weapon in a

8  threatening manner.

9      51.     Mr. Rocha Cortez's assistance also helped lead to the successful prosecution of

10 the individual who struck him with a bat. The Canyon County Prosecutor's Office charged the

11 assailant with aggravated battery under Idaho Code Ann. § 18-907.

12     52.     Based on Mr. Rocha Cortez's assistance, a deputy prosecuting attorney at the

13 Canyon County Prosecutor's office signed an I-918 Supplement B for Mr. Rocha Cortez. The

14 form certified that Mr. Rocha Cortez had been helpful in assisting law enforcement with the

15 investigation of the individuals who had participated in his assault.

16     53.     Aggravated battery under Idaho Code Ann. § 18-907 is a qualifying crime for U

17 status purposes, as it is a "similar activity" to "felonious assault." 8 U.S.C. § 1101(a)(15)(U)(iii).

18     54.     Mr. Rocha Cortez suffered significant physical and mental abuse because of this

19 incident. The assault produced bleeding, fractured a bone, and left him hospitalized. In addition,

20 the assault resulted in lasting headaches and dizziness, as well as significant stress and fear.

21     55.     Notwithstanding the attack, Mr. Rocha Cortez has enjoyed a productive life in the

22 United States. He has married and has three U.S. citizen children—two daughters and one son.

23

24

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1    The oldest is ten years old and the youngest is five. Mr. Rocha Cortez has worked in agricultural

2    jobs and as a wildland firefighter to provide for his family both here in the United States.

3      56.  On October 2, 2017, Mr. Rocha Cortez submitted an application to obtain U status

4    on the basis of the assault he suffered in 2007. His wife is included as a derivative on the

5    petition, providing an opportunity for her to qualify for U visa status as well. USCIS provided a

6    receipt notice for the petition dated October 30, 2017.

7      57.  Nearly a year and half later, on February 27, 2019, ICE apprehended Mr. Rocha

8    Cortez one morning while leaving an apartment in Oregon.

9      58.  ICE then proceeded to detain Mr. Rocha Cortez at the Northwest Detention and

10   placed him in removal proceedings.

11     59.  After ICE placed Mr. Rocha Cortez in removal proceedings, his immigration

12   counsel asked ICE to request a prima facie determination from USCIS on his U visa petition. An

13   ICE trial attorney made that request on April 26, 2019, following a preliminary hearing in Mr.

14   Rocha Cortez's case. USCIS did not respond.

15     60.  Once in removal proceedings, Mr. Rocha Cortez also applied for cancellation of

16   removal under 8 U.S.C. § 1229b(b)(1). Cancellation of removal under § 1229b(b)(1) is a form of

17   immigration relief that allows longtime residents of the United States who entered the country

18   unlawfully to obtain lawful permanent resident status if they meet certain requirements,

19   including (1) having ten years of continuous presence in the United States, (2) having "good

20   moral character" and not having committed certain offenses, and (3) demonstrating that a

21   qualified U.S. citizen or lawful permanent resident would suffer extreme and unusual hardship if

22   the noncitizen is removed.

23

24

COMPLAINT - 13
Case No. 2:19-cv-2091

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

61.     In Mr. Rocha Cortez's case, he provided significant evidence that his children will suffer extreme and unusual hardship if he is removed (and already are because of his detention). His eldest child and daughter suffers from chronic liver dysfunction and also has a history of kidney and urinary tract infections, meaning frequent doctors visit and constant parental care are essential.

62.     On July 7, 2019, and September 6, 2019, the immigration court held hearings on Mr. Rocha Cortez's cancellation of removal application. Despite the significant physical and mental health issues Mr. Rocha Cortez's children face, the immigration judge (IJ) denied his application for failing to establish that his removal would cause cause his children extreme and unusual hardship.

63.     After the individual hearings, Mr. Rocha Cortez's second oldest—his nine-year-old daughter—threatened to commit suicide at school, underscoring the extreme stress and difficulty that her father's absence is already placing on the family. As a result of that incident, she was hospitalized.

64.     Mr. Rocha Cortez filed an appeal of the IJ's decision denying cancellation of removal relief to the Board of Immigration Appeals (BIA). That appeal is currently pending.

65.     In between the July 7 and September 6 immigration court hearings, an ICE trial attorney once again requested that USCIS make a prima facie determination on Mr. Rocha Cortez's U-visa petition. This time, USCIS responded by saying that the agency did not have Mr. Rocha Cortez's file.

66.     On September 2, 2019, Mr. Rocha Cortez's immigration counsel requested assistance from the office of Senator Mike Crapo to inquire about the status of theU visa petition.

COMPLAINT - 14
Case No. 2:19-cv-2091

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

About two weeks later, on September 19, the Senator's office forwarded a response from USCIS saying the agency did not have an update on the petition's status.

67.     That same day—September 19—Mr. Rocha Cortez's immigration counsel filed a request to expedite the processing of his U status petition. She also requested a status update on the case

68.     One day later, the Vermont Service Center (VSC) responded to the status update request, saying that Mr. Rocha Cortez's "case is not currently located at the VSC. It is located at the [USCIS] Seattle Field Office. We are unable to assist you with your inquiry at this time." This response came nearly six months after ICE first requested a prima facie determination.

69.     A few weeks later, on October 4, 2019, Mr. Rocha Cortez's immigration counsel again requested an update from USCIS. USCIS responded on October 25 by again casting blame on the location of the file, which the VSC continued to claim was in Seattle.

70.     Mr. Rocha Cortez's prima facie determination and requests to expedite remain pending. His U visa application has now been pending well over two years.

71.     In light of these dramatically inflated wait times, U visa applicants like Juan recently filed a class action complaint in the Eastern District of New York. *See N-N v. McAleenan*, No. 19-cv-05295 (E.D.N.Y) (filed Sept. 17, 2019). The case challenges USCIS's unlawful failure to adjudicate pending U visa petitions and place those petitioners on the wait list.

72.     Specifically, the plaintiffs in *N-N* have proposed certifying a class of U visa of applicants whose applications had been pending for over two years as of the complaint filing date. While two years is significantly higher than the processing times of recent years, it would

1    significantly reduce the current waiting time of over 44 months for adjudication of a U visa

2    petition.

3        73.    Mr. Rocha Cortez's situation presents particularly compelling factors that

4    underscore USCIS's unreasonable delay. Unlike many of the class members in *N-N*—which

5    includes all U visa applicants—Mr. Rocha Cortez is in removal proceedings *and* is detained. The

6    cases of immigration detainees receive expedited treatment compared to other cases, making

7    protections like the prima facie determination and waiting list particularly important for them.

8        74.    As a result, Mr. Rocha Cortez is among the most likely to face removal absent

9    adjudication of his U visa petition. The agency has nevertheless ignored his request for a prima

10   facie determination, as well as his request to expedite his case.

11   **Mr. Rocha Cortez's Detention**

12       75.    After ICE arrested Mr. Rocha Cortez, ICE placed him in detention at the

13   Northwest Detention Center.

14       76.    On March 8, 2019, Mr. Rocha Cortez submitted an evidence packet to the

15   immigration court in support of his request for bond with the assistance of counsel.

16       77.    The evidence packet included Mr. Rocha Cortez's response to a questionnaire

17   from the immigration court, his children's birth certificates and school records, evidence of his

18   daughter's health problems, evidence of his stable address and home, over 20 letters of support

19   from employers, family members, and friends (including a letter attesting to Mr. Rocha Cortez's

20   bravery in firefighting), and evidence regarding his criminal history. As to this last issue, and as

21   noted above, Mr. Rocha Cortez has offenses related to his failure to obtain a license and two DUI

22   offenses – one from 2008 and one from 2018.

23

24

78.     On March 14, 2019, IJ John Odell denied bond, determining that no bond whatsoever was justified because Mr. Rocha Cortez is a "danger to the community." Mr. Rocha Cortez has no violent criminal history.

79.     Mr. Rocha Cortez did not appeal the IJ's decision because he did not have money to pay his attorney to appeal the case and he did not know he could appeal the case pro se.

80.     Mr. Rocha Cortez remains in detention, and has been detained for nearly ten months.

## CLAIMS FOR RELIEF

### Count I
### Administrative Procedure Act – Unreasonable Agency Delay
### (Failure to Make Prima Facie Determination)

81.     Mr. Rocha Cortez repeats and re-alleges the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

82.     Under the INA, Congress provided a specific protection mechanism for U visa applicants facing removal: the prima facie determination. *See* 8 U.S.C. § 1227(d)(1). USCIS is tasked with making such determinations.

83.     A positive prima facie determination allows a noncitizen to seek a stay from ICE for the pendency of their U visa proceedings, protecting that individual from removal from the United States. In addition, the BIA has recognized that prima facie determinations can help IJs to assess whether to grant a continuance in removal proceedings. *See Matter of Sanchez Sosa*, 25 I. & N. at 812-16.

84.     Defendants have a statutory obligation to process Mr. Rocha Cortez's prima facie determination request within a reasonable time. 5 U.S.C. § 555(b). That is particularly true in the context of a detainee in removal proceedings, where the prima facie determination protects the important right of applying for an administrative stay from removal.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

85.     The APA empowers federal courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Under the APA, this Court may compel agency action that is discrete and which an agency is required to take. *Norton v. South Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). For the reasons set forth above, the prima facie determination satisfies this requirement.

86.     Defendants have failed to make a prima facie determination in Mr. Rocha Cortez's case for over eight months.

87.     Defendants' months-long delay in making a prima facie determination in Mr. Rocha Cortez's case is unreasonable. Accordingly, this Court should order Defendants to determine whether Mr. Rocha Cortez is prima facie eligible for a U visa immediately.

**Count II**
**Administrative Procedure Act – Unreasonable Agency Delay**
**(Failure to Adjudicate U Visa Petition)**

88.     Mr. Rocha Cortez repeats and re-alleges the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

89.     Under the INA and federal regulations, Defendants have a duty to adjudicate U visa petitions. 8 U.S.C. §§ 1101(a)(15)(U), 1184(p); 8 C.F.R. § 204.14(d)(2).

90.     Under 8 C.F.R. § 204.14(d)(2), USCIS "must" place "[a]ll eligible petitioners" on the U visa waiting list. Placing an individual on the waitlist ensures that they will receive employment authorization and will not face removal from the United States. These protections help encourage noncitizen victims of crime to report crimes and guarantee that they remain in the United States to assist law enforcement if necessary.

91.     Adjudication of a U visa petition is a discrete action that the agency is required to take, and this Court may therefore order Defendants to adjudicate Mr. Rocha Cortez's petition.

92.     Defendants have delayed well over two years in adjudicating Mr. Rocha Cortez's U visa petition.

93.     Defendants' years-long delay in adjudicating Mr. Rocha Cortez's petition is unreasonable. Congress had indicated that it expects Defendants to adjudicate immigration benefit applications within six months of filing. *See* 8 U.S.C. § 1571(b). Moreover, here, Mr. Rocha Cortez is a detainee in removal proceedings, making the timely adjudication of his application particularly important. Congress has recognized that U visa applicants in removal proceedings should receive timely consideration of their applications. *See id.* § 1227(d)(1). Finally, agency regulations and policies recognize the important protections that adjudication of a petition provides, further underscoring that the agency must act in a timely fashion.

94.     Accordingly, this Court should order Defendants to remedy their unlawful delay of Mr. Rocha Cortez's application and adjudicate his U visa petition.

**Count III**
**Writ of Mandamus**
**(Failure to Make Prima Facie Determination)**

95.     Mr. Rocha Cortez repeats and re-alleges the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

96.     A writ of mandamus is appropriate when "(1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available." *Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th Cir. 2003) (quoting *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1998)).

97.     For the reasons explained above, Defendants have a clear duty to make a prima facie determination in Mr. Rocha Cortez' case.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

98.     No other remedy is available to ensure Mr. Rocha receives a timely

determination. Despite repeated inquiries about the determination, Defendants have failed to act,

and therefore issuing a writ is appropriate to ensure the agency promptly complies with its duty.

**Count IV**
**Writ of Mandamus**
**(Failure to Adjudicate U Visa Application)**

99.     Mr. Rocha Cortez repeats and re-alleges the allegations contained in the preceding

paragraphs of this Complaint as if fully set forth herein.

100.    Under the INA and federal regulations, Defendants have a clear duty to adjudicate

Mr. Rocha Cortez's U visa application and place him on the U visa waitlist.

101.    No other remedy is available to ensure Mr. Rocha Cortez receives a timely

determination. Despite repeated inquiries about Mr. Rocha Cortez's petition, Defendants have

failed to act on it. Issuance of a writ is appropriate to ensure that the agency promptly complies

with its duty to adjudicate Mr. Rocha Cortez's application.

**Count V**
**Writ of Habeas Corpus – Violation of Fifth Amendment Right**
**to Due Process (Freedom from Arbitrary Detention)**

102.    Mr. Rocha Cortez repeats and re-alleges the allegations contained in the preceding

paragraphs of this complaint as if fully set forth herein.

103.    The Due Process Clause of the Fifth Amendment forbids the government from

depriving any "person" of liberty "without due process of law." U.S. Const. amend. V.

104.    Mr. Rocha's Cortez's detention is not reasonably related to a legitimate

government purpose. The IJ based his decision denying Mr. Rocha Cortez's release on his

alleged danger to the community. Mr. Rocha Cortez has no criminal history other than offenses

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

related to his inability to obtain a license (a product of his immigration status) and two DUIs that occurred nearly a decade apart.

105.    For this reason, the Court should order Mr. Rocha Cortez's immediate release.

106.    Moreover, DHS has prolonged Mr. Rocha Cortez's detention without providing him an opportunity to test the continuing validity of his detention.

107.    To justify Mr. Rocha Cortez's ongoing prolonged detention, due process requires that the government establish, at an individualized hearing before a neutral decisionmaker, that his detention is justified by clear and convincing evidence of flight risk or danger, as well as whether alternatives to detention could sufficiently mitigate any risk that does exist.

108.    For these reasons, Mr. Rocha Cortez's ongoing detention without a hearing violates the Due Process Clause of the Fifth Amendment.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

a.    Assume jurisdiction over this matter;

b.    Issue a writ of mandamus or an order requiring Defendants to adjudicate Mr. Rocha Cortez's request for a prima facie determination on his U visa application within seven days;

c.    Issue a writ of mandamus or an order requiring Defendants to adjudicate Mr. Rocha Cortez's U visa application within thirty days;

d.    Issue a writ of habeas corpus; hold a hearing before this Court if warranted; determine that Mr. Rocha Cortez's detention is not justified because the government has not established by clear and convincing evidence that Mr. Rocha Cortez presents a risk of flight or danger in light of available alternatives to

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1   detention; and order Mr. Rocha Cortez's release, with appropriate conditions of

2   supervision if necessary, taking into account his ability to pay a bond;

3   e.   In the alternative, issue a writ of habeas corpus and order Mr. Rocha Cortez's

4   release within 30 days unless Defendants schedule a hearing before an

5   immigration judge. At that hearing, and in order to continue detention, the

6   government must establish by clear and convincing evidence that Mr. Rocha

7   Cortez presents a risk of flight or danger, even after consideration of alternatives

8   to detention that could mitigate any risk that his release would present. The Court

9   should further order that if the government cannot meet its burden, the

10  immigration judge must order Mr. Rocha Cortez's release on appropriate

11  conditions of supervision, taking into account his ability to pay a bond;

12  f.   Award Petitioner attorney's fees and costs under the Equal Access to Justice Act

13  ("EAJA"), as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and on any other

14  basis justified under law; and

15  g.   Grant any other and further relief that this Court deems just and proper.

16  DATED this 27th day of December, 2019.

17  s/ Matt Adams
    Matt Adams, WSBA No. 28287
    Email: matt@nwirp.org

18
19  s/ Aaron Korthuis
    Aaron Korthuis, WSBA No. 53974
    Email: aaron@nwirp.org

20
21  Northwest Immigrant Rights Project
    615 Second Ave., Ste 400
22  Seattle, WA 98104
    (206) 957-8611

23  *Attorneys for Petitioner*

24

COMPLAINT - 22
Case No. 2:19-cv-2091

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611